**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTINE LOCKE,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, *et al.*<br><br>Defendants. | No. 24cv6496 (EP) (SDA)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Christine Locke brings two claims under the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., for alleged race- and sexual orientation-based discrimination by various employees of the Federal Emergency Management Agency ("FEMA").[1] *See* D.E. 59 ("Amended Complaint" or "AC"). According to Locke, FEMA unlawfully rescinded an employment offer extended to her for a role as an Emergency Management Specialist (Response) Division Supervisor (the "Position") after learning that she had previously been arrested—and the charges dismissed and later expunged—on four occasions. *Id.*

The Government now moves to dismiss the Amended Complaint. D.E. 61 ("Motion" or "Mot."). Locke opposes. D.E. 62 ("Opposition" or "Opp'n"). The Government replies. D.E. 67 ("Reply"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b).

[1] Plaintiff sues the United States Department of Homeland Security ("DHS") and its Secretary, Alejandro Mayorkas, in his official capacity. As set forth in Section III.D, (1) Secretary Markwayne Mullin is automatically substituted for former Secretary Mayorkas, Fed. R. Civ. P. 25(d); and (2) DHS is dismissed as an improper defendant, 42 U.S.C. § 2000e-16(c). The Court refers to Secretary Mullin, the proper remaining defendant, as the "Government."

The Government's primary argument for dismissal is that Locke has not pleaded circumstances giving rise to an inference of discrimination. *See* Mot. That argument focuses on comparators alone, stating that Locke's comparators are not similarly situated to her, that their criminal histories differ from hers, and that she never alleges FEMA knew of their convictions when it hired them. *Id.* at 6–7. But a comparator is only one of several ways to raise an inference of discrimination, and the Motion does not address any other method for pleading a discrimination claim. The Court finds that Locke's comparator allegation, standing alone, would not state a claim. But Locke pleads additional allegations that, taken together, plausibly support an inference of discrimination.

Accordingly, the Court will **DENY** the Motion, **DISMISS** the claims against DHS because the Secretary is the sole proper federal-sector defendant, and direct the Clerk to substitute Secretary Markwayne Mullin for former Secretary Mayorkas.

## I. BACKGROUND[2]

### A. Factual Background

Locke is an African American lesbian woman who spent twenty-five years as a police officer with the Newark Department of Public Safety. AC ¶¶ 14, 18, 20–27. Over that span, Locke rose from patrol officer to Executive Officer of Newark's Fifth Precinct, where she oversaw two hundred personnel. *Id.* Locke retired in March 2020. *Id.* ¶ 27.

Locke was arrested and charged four times—in 1989, 2003, 2017, and 2021.[3] *Id.* ¶¶ 29–32. All four charges were dismissed. *Id.* The last two charges were for domestic simple assault,

[2] The facts in this section are taken from allegations in the Amended Complaint, which the Court presumes true for purposes of the Motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

[3] The Amended Complaint dates the fourth arrest in one place as June 23, "2023." AC ¶ 32. However, the same Amended Complaint twice dates the arrest to 2021, *id.* ¶¶ 45, 59, and the May

*id.* ¶ 45, and the last three charges were brought by ex-girlfriends who recanted their allegations or whose allegations were dismissed. *Id.* ¶¶ 30–32. As to the first charge, the Amended Complaint vaguely states that Locke "was arrested based on false charges, which the Superior Court of New Jersey later dismissed without PLAINTIFF having to appear in Court." *Id.* ¶ 29. The Superior Court of New Jersey expunged all four arrests in May 2022, directing that the record be removed from all databases and that each arrest "be deemed as to not have occurred." *Id.* ¶¶ 34, 59.

In October 2022, Locke interviewed for and was offered the Position. *Id.* ¶ 33. The offer was contingent on a background investigation by FEMA's Office of the Chief Security Officer ("OCSO"). *Id.* ¶ 37. Four OCSO employees are relevant here: (1) Personnel Security Specialist Mackenzie Miller; (2) Investigator Pia Warrington; (3) their supervisor, Section Chief Michael Spangler; and (4) Branch Chief Cecilia Nadeau. *Id.* ¶¶ 37, 41–42, 44, 47, 56. Nadeau was the final reviewer in Locke's selection process. *Id.* ¶ 37.

The background check surfaced the expunged arrests. *Id.* ¶ 44. On November 16, 2022, Miller sent Locke a letter of interrogatory ("LOI") disclosing the OCSO's concerns with Locke's past alleged criminal conduct and requesting details and mitigation materials. *Id.* Locke responded with the circumstances, the disposition of each arrest, and the expungement order. *Id.* ¶ 46. Miller then sent Locke what the Amended Complaint describes as an "intimidating and harassing" email demanding information Miller already possessed, followed by a second email written entirely in capital letters and bold font. *Id.* ¶ 56. Ultimately, Warrington concluded that the expungement order fully mitigated the OCSO's concerns and recommended Locke for the Position. *Id.* ¶¶ 47, 74.

---

2022 expungement covered all four arrests, *id.* ¶ 34. The Court treats the "2023" as a scrivener's error. The Government does not raise the point.

According to Locke, Spangler advised Warrington "to not put weight on expungement orders," which "led to the unfavorable determination." *Id.* ¶ 48. Spangler allegedly "instructed Warrington to change her recommendation." *Id.* ¶ 81. Based on Locke's "information and belief," Spangler had learned shortly before giving that instruction—through the interview process, Locke's resume, and her LOI responses—that Locke was an African American lesbian. *Id.* ¶ 50.

On January 19, 2023, Locke received a non-selection letter signed only by Nadeau, finding Locke unfavorable for the Position "due to criminal concerns." *Id.* ¶¶ 35–37. Nadeau stated in the letter that the "events cannot be verified absent a police offense report or prosecutor record as only the subject is providing details. The fact that she was in a position of public trust as a law enforcement officer when the 2 most recent incidents occurred, convey greater negative weight to the behavior, regardless of whether or not the case was dismissed or expunged." *Id.* ¶ 39. Nadeau did not seek police reports or prosecutor records. *Id.* ¶ 40.

**B. Procedural History**

After receiving the non-selection letter, Locke filed a complaint with DHS, Agency Case No. HS-FEMA-00775-2023. AC ¶ 7. DHS completed its investigation on March 13, 2024, and the Final Agency Decision was entered on March 21, 2024. *Id.* ¶ 8; *id.*, Ex. A.[4]

Locke also filed a complaint with the EEOC under EEOC No. 520-2023-00362X. *Id.* ¶ 9. The EEOC dismissed Locke's complaint on February 26, 2024. *Id.* ¶ 10; *id.*, Ex. B. Locke brought this action within ninety days of the Final Agency Decision. *Id.* ¶ 12. The Government contests neither exhaustion nor timeliness. *See* Mot.

[4] Exhibits A and B to the Amended Complaint are the Final Agency Decision and the United States Equal Employment Opportunity Commission ("EEOC") dismissal, respectively. Pincites to docket entries use the page numbers generated by CM/ECF.

On May 28, 2024, Locke began this action and amended the complaint a week later. *See* D.Es. 1 & 4. The Government sought leave to move to dismiss on comparator grounds, D.E. 13, and Locke opposed, D.E. 14. At a conference in January 2025, the Court outlined Locke's pleading deficiencies and Locke—through counsel—agreed to amend within thirty days. D.E. 18. Locke's counsel then withdrew, D.Es. 21 & 25, and Locke herself twice moved unsuccessfully for reconsideration, D.Es. 32, 36. In March 2025, the Court provided Locke until June 16, 2025, to amend her complaint. *See* D.E. 27.

Locke appeared *pro se* on May 13, 2025. D.E. 35. Locke filed an opposition containing the Amended Complaint, D.E. 44 at 4–38, which was docketed as the operative Amended Complaint. The Government now moves to dismiss the Amended Complaint, and the Motion is fully briefed.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

Because Locke proceeds *pro se*, the Court construes her Amended Complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*,

551 U.S. 89, 94 (2007). But liberal construction does not relax the obligation to plead facts: a *pro se* plaintiff must still allege enough to state a plausible claim. *Mala v. Crown Bay Marina*, 704 F.3d 239, 245 (3d Cir. 2013).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although there is no "probability requirement," a plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully." *Id.* The allegations must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The universe the Court may consider includes the Amended Complaint's Exhibits A and B. *See Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (holding that the district court properly considered the plaintiff's EEOC file, which the complaint referenced and which was integral to his claim).

## III. DISCUSSION

Title VII's federal-sector provision requires that personnel actions affecting federal employees and applicants "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Discrimination based on sexual orientation is discrimination on the basis of sex. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender

without discriminating against that individual based on sex."). Locke's two counts—Count One for race discrimination, Count Two for sex and sexual orientation discrimination—therefore rest on traits Title VII covers.

**A. Governing Law for Title VII Discrimination Claims**

A Title VII plaintiff may proceed under either the pretext theory set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), or the mixed-motive theory set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45 (1989) (plurality opinion).

The *McDonnell Douglas* burden-shifting pretext framework requires a plaintiff to establish (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). These four elements are flexible and "must not be applied woodenly." *Geraci v. Moody-Tottrup, Int'l*, 82 F.3d 578, 581 (3d Cir. 1996). "If the [plaintiff] establishes a *prima facie* case, the burden shifts to the employer to establish a legitimate nondiscriminatory reason for its employment action. If the employer provides such a reason, the burden shifts back to the employee to show that the proffered reason was mere pretext for actual discrimination." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787–88 n.5 (3d Cir. 2016).

"Notwithstanding this burden-shifting framework, a plaintiff who produces direct evidence of discrimination may proceed under the mixed-motive framework." *Id.* at 788 n.5. Under the *Price Waterhouse* framework, a plaintiff may produce evidence that "is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production." *Id.* (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994)).

The "pretext" and "mixed-motive" labels "can be misleading because, even in a case that does not qualify" for burden shifting, "the employer's conduct may nevertheless result from two or more motives" and a plaintiff "may prevail simply by showing, through direct or circumstantial evidence, that the challenged conduct resulted from discrimination." *Id.* (citing *Watson v. Se. Pa. Transp. Auth.*, 207 F.3d 207, 214 n.5 (3d Cir. 2000)).

Both theories of discrimination require the plaintiff to "establish that her protected status was a factor in the employer's challenged action." *Id.* "The difference is in the degree of causation that must be shown: in a 'mixed-motive' case, the plaintiff must ultimately prove that her protected status was a 'motivating' factor, whereas in a non-mixed-motive or 'pretext' case, the plaintiff must ultimately prove that her status was a 'determinative' factor." *Id.* (citing *Watson*, 207 F.3d at 214–20). Locke's Amended Complaint does not—and she is not required to—specify which theory she advances. A plaintiff may keep both theories open past the pleadings because "identifying the proof before there has been discovery would seem to put the cart before the horse." *Connelly*, 809 F.3d at 788 (taking "it as given that [the plaintiff] may advance either a mixed-motive or a pretext theory").

At this stage, the *McDonnell Douglas* elements identify what Locke must eventually prove and are not a checklist that the Amended Complaint must satisfy. *See id.* (discussing how the district court's "analysis [of] a point-by-point consideration of the elements of a prima facie case" was incorrect). A complaint for discrimination "need not establish a prima facie case in order to survive a motion to dismiss" because a prima facie case under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement[,] and hence is not a proper measure of whether a complaint fails to state a claim." *See id.* at 788–89 (internal quotation marks and citations omitted). In other words, "[t]o defeat a motion to dismiss, it is sufficient to allege a prima facie

case. But it is not necessary." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citations omitted) (discussing motion to dismiss pleading standard for age discrimination claim).

A Title VII plaintiff must plead only enough facts to "raise a reasonable expectation that discovery will reveal evidence" that her protected status was a "motivating or determinative factor" in the adverse action. *Connelly*, 809 F.3d at 791. "Nor does [a plaintiff] have to anticipate and preempt the [employer's] possible explanations (at least, not yet)." *Martinez*, 986 F.3d at 267. Whether the alleged circumstances ultimately "give rise to an inference of discrimination," and whether claimed comparators prove to be "relevant comparators," are questions for "the court at summary judgment—and ultimately, perhaps, the jury at trial." *Id.*

A comparator is a person outside the plaintiff's protected class who was treated more favorably in circumstances close enough that the difference in treatment says something about the employer's motive. Comparators "need not be identical but must be similarly situated in 'all material respects,'" and the similarities that matter include whether the employees shared a supervisor, were held to the same standards, and had similar job responsibilities. *Qin v. Vertex*, 100 F.4th 458, 474 (3d Cir. 2024) (quoting *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018)). Because the Motion presses the comparator route alone, the Court takes up Locke's comparator allegation first and the rest of the Amended Complaint second.[5]

---

[5] The Government asks the Court to measure the Amended Complaint against a prima facie case and treats the absence of comparator detail as dispositive. Mot. at 5–8; Reply at 1–3. The Motion quotes *Golod* for the proposition that a plaintiff "must point to" comparator evidence, evidence of similar discrimination against other employees, or direct evidence of animus. Mot. at 6 (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702–03 n.2 (3d Cir. 2010)). But that quotation begins mid-sentence. *Golod* states that the plaintiff there "was not required to plead comparator evidence to support an inference of discrimination." 403 F. App'x at 702–03 n.2 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)). And nearly all the Government's remaining comparator authorities are summary judgment decisions, which weigh evidence rather than test whether allegations are properly pleaded. *See* Mot. at 6–7 (citing *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881–82 (3d Cir. 2011); *Wright v. Providence Care Ctr.*, 822 F. App'x 85,

### B. Locke's Comparator Allegation, Standing Alone, Would Not State a Claim

Locke alleges, on information and belief, that "DHS and FEMA have hired white, male heterosexuals who have been convicted of simple assault." AC ¶ 53. But those are all the comparator facts Locke alleges. Locke does not include names, positions, or departments. *See* AC. Fatally, Locke does not allege that FEMA knew of the convictions when it hired those individuals. *Id.*

A comparator is an employee outside the plaintiff's protected class whom the employer treated more favorably under circumstances similar enough that the difference in treatment says something about the employer's motive. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013) (noting that identification of a similarly situated individual outside the protected class who was treated more favorably "may give rise to an inference of unlawful discrimination"). Comparator employees "need not be identical but must be similarly situated in 'all material respects.'" *Qin v. Vertex*, 100 F.4th 458, 474 (3d Cir. 2024) (quoting *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018)). The Third Circuit looks to "job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004). Courts are required "to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." *Id.*

Courts in this District accordingly consider "whether the plaintiff and the comparator had similar job responsibilities, were subject to the same standards, worked for the same supervisors, and engaged in comparable misconduct." *Ewell v. NBA Props.*, 94 F. Supp. 3d 612, 624 (D.N.J.

---

93 (3d Cir. 2020); *Foxworth v. Pa. State Police*, 228 F. App'x 151, 157–58 (3d Cir. 2007); *Carter v. PSEG Servs. Corp.*, No. 20-15573, 2024 WL 1956510, at *12 (D.N.J. May 3, 2024)).

2015) (citing *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011)). At the pleading stage, a plaintiff "is not required to plead detailed factual allegations," but must "allege some facts that plausibly allege an inference of discrimination," which she may do "with any kind of relevant evidence, including comparator evidence." *Dzibela v. BlackRock,* No. 23-2093, 2024 WL 4349813, at *10–11 (D.N.J. Sept. 30, 2024) (citation modified) (quoting *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 540 (D.N.J. 2022)).

Locke's comparator allegations are "naked assertion[s]" without the "further factual enhancement" plausibility requires. *Iqbal*, 556 U.S. at 678 (citation omitted). More specifically, the Amended Complaint lacks specific allegations to establish a discrimination claim based solely on a comparator. *See Golod*, 403 F. App'x at 702–03 (affirming dismissal where the plaintiff "did not provide any characteristics of those individuals" allegedly treated more favorably); *Wiggins v. Universal Prot. Servs.*, No. 22-1491, 2022 WL 4116912, at *3–4 (3d Cir. Sept. 9, 2022) (affirming dismissal where the complaint's own allegations and attached exhibits showed the comparator was not similarly situated).

To be clear, this defect is not because Locke's allegations are pleaded on "information and belief." *See* AC ¶ 53. Pleading on information and belief is permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control," so long as the allegation is not "boilerplate and conclusory" and the pleader "accompan[ies] their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

Locke fails to allege the requisite factual information: who FEMA hired, with what criminal histories, and what its background checks revealed are quintessentially facts within

FEMA's control. The defect is that the Amended Complaint supplies no factual content beyond the bare comparison—nothing from which the Court could infer that the comparison is applicable rather than speculative. *See* AC. Locke's comparator allegation, standing alone, therefore does not plausibly support an inference of discrimination. *See Tummala v. Wormuth*, No. 22-7619, 2024 WL 4449477, at *4 (D.N.J. Oct. 9, 2024) (dismissing *pro se* federal-sector Title VII claim where the identified comparator was not similarly situated).

The Government relies on *Qin*, 100 F.4th at 474, which it quotes for the rule that "[a]n employee who holds a different job title or works in a different department is not similarly situated." Mot. at 6. But *Qin* vacated summary judgment in part because the employer "insist[ed] on too narrow a definition" of comparability, noting that comparators "need not be identical but must be similarly situated in 'all material respects.'" 100 F.4th at 474 (quoting *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018)). But Locke alleges more than just a comparator.

**C. Locke's Non-Comparator Allegations Plausibly Allege an Inference of Discrimination**

The Motion fails to grapple with the governing law: whether the Amended Complaint's remaining allegations "raise a reasonable expectation that discovery will reveal evidence that [race or sexual orientation was] a motivating or determinative factor" in FEMA's decision not to hire Locke. *See Connelly*, 809 F.3d at 791. They do. Locke's allegations fall into four groups that, read together, plausibly raise a reasonable expectation that discovery will reveal evidence of discrimination. Those allegations concern the reversal of a favorable security recommendation, statements by the FEMA officials who made the decision, those officials' history of similar complaints, and FEMA's treatment of the expungement order.

*The reversal sequence.* The AC alleges a specific, detailed chronology. Warrington (the first-level investigator) reviewed Locke's LOI response and the expungement order, found the

OCSO's concerns fully mitigated, and recommended Locke for the Position. AC ¶¶ 46–47. Spangler (Section Chief) then instructed Warrington to give the expungement order no weight and to reverse the recommendation. *Id.* ¶¶ 48, 81, 90–91. On Locke's information and belief, Spangler had learned "just prior" to that instruction—through the interview process, Locke's resume (which listed "LGBTQ Workplace Inclusion"), and her LOI responses—that Locke is an African American lesbian. *Id.* ¶ 50.

In short, Locke alleges that a favorable recommendation was reversed on a supervisor's instruction, timed to that supervisor's alleged discovery of Locke's protected traits. That is a factual allegation that the Court must take as true—not a legal conclusion it must disregard. *See Martinez*, 986 F.3d at 265–67 (reversing and remanding dismissal of a complaint alleging that plaintiff's employment replacements were "significantly younger" because such a statement is factual and must be credited). The timing allegation rests on information and belief. But what Spangler knew and when he learned it is within the Government's knowledge, and Locke pleads her belief that the materials before the security office disclosed both traits. *McDermott*, 649 F. App'x at 267–68.

*FEMA decisionmaker statements.* In the administrative proceedings that followed FEMA's rescission of the Position, Spangler swore in a May 31, 2023 affidavit that Locke has an "extensive criminal record." AC ¶¶ 55, 87, 92. On the Amended Complaint's own allegations, that description is false: Locke has no convictions, every charge was dismissed, and every arrest was expunged. *Id.* ¶¶ 51, 59. The Amended Complaint alleges that Spangler's statement reflects a racial stereotype of criminality applied to Locke, a Black woman seeking a supervisory federal position. *Id.* ¶¶ 76, 87. Statements by supervisors "suggesting racial animus" are a recognized route to an inference of discrimination. *Golod*, 403 F. App'x at 702–03 n.2.

*Admission of prior complaints.* Nadeau (the final reviewer and sole signatory of the non-selection letter) allegedly "admitted when questioned" that she and Spangler "had been the subject of prior complaints involving race-based and sexual orientation-based discrimination, including complaints specifically involving hiring decisions at FEMA." AC ¶¶ 37, 93. An inference of discrimination can be drawn from "evidence of similar racial discrimination of other employees." *Golod*, 403 F. App'x at 702–03 n.2. The allegation lacks dates and outcomes, but it names the FEMA officials, the protected traits (race and sex), and the setting (hiring for the Position). At the pleading stage, those are factual allegations about the officials who decided Locke's application.

*Treatment of expungement.* Warrington read the expungement order as fully mitigating the OCSO's concerns. AC ¶ 47. Spangler disagreed, which the AC alleges was "inconsistent with federal law and FEMA's practices when dealing with white applicants." *Id.* ¶ 77. Nadeau's stated rationale treated the arrests as disqualifying "regardless of whether or not the case was dismissed or expunged," while faulting Locke for the absence of police reports that the expungement itself rendered unavailable—records Nadeau never sought. *Id.* ¶¶ 39–40, 108. The Court need not decide whether reliance on expunged records violates any law. At this stage, a stated reason that discounts a court order nullifying Locke's arrests and overrides the assigned investigator's contrary conclusion supports an inference of a departure from ordinary process. *See* Opp'n at 4.

Taken together—the sequence, the statements, the prior complaints against the same officials, and the disputed treatment of the expungement—Locke's allegations raise a reasonable expectation that discovery will reveal evidence of race- and sex-based discrimination, as *Connelly* requires. *See* 809 F.3d at 791; *Rhodes v. Northumberland Cnty.*, No. 23-1807, 2024 WL 3258208, at *5–6 (M.D. Pa. July 1, 2024) (denying motion to dismiss race- and gender-based Title VII claims

where the plaintiff pleaded facts connecting the adverse action to her protected classes). Count One survives.

And so does Count Two. Discrimination because of sexual orientation is discrimination based on sex. *Bostock*, 590 U.S. at 660. Count Two also carries trait-specific allegations of its own. Locke's resume and LOI responses disclosed her sexual orientation, AC ¶¶ 50, 106, and the OCSO officials allegedly "changed course" shortly after that disclosure, *id.* ¶ 107. After receiving Locke's LOI response, Miller sent Locke an "intimidating and harassing" email demanding information Miller already had, followed by another in all capital letters and bold font. *Id.* ¶¶ 56, 94. Additionally, in a June 7, 2023 affidavit, Miller repeatedly referred to Locke as "they," although Locke identifies as female—deliberate misgendering that the AC alleges was "meant to humiliate and delegitimize Plaintiff's identity as a woman and lesbian." *Id.* ¶¶ 58, 109.[6]

At this stage, Locke "is not obliged to choose whether she is proceeding under a mixed-motive or pretext theory, nor is she required to establish a *prima facie* case, much less to engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings." *Connelly*, 809 F.3d at 791. The Amended Complaint accordingly need not allege whether race or sexual orientation was a "motivating" rather than a "determinative" factor, nor anticipate and answer the reason FEMA gave for the rescission. *See Martinez*, 986 F.3d at 267.

The Motion is therefore **DENIED** as to Counts One and Two.[7]

---

[6] The Court notes that Locke's Opposition includes facts that do not appear in the AC, including an alleged "violent criminal" remark by FEMA personnel. Opp'n at 2–4. A plaintiff may not amend her complaint through briefing. *Com. of Pa. ex rel. Zimmerman v. PepsiCo*, 836 F.2d 173, 181 (3d Cir. 1988). Therefore, the Court has not considered facts not included in the AC.

[7] Because the Motion is denied, Locke's alternative request for leave to amend, Opp'n § V, and the Government's futility argument, Reply at 3–4, are **DENIED** as **MOOT**.

**D. Secretary Markwayne Mullin Is the Proper Defendant**

DHS is not a proper defendant. In a federal-sector Title VII action, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). The AC names both the Secretary and DHS itself. AC ¶¶ 15, 17. Accordingly, the claims against DHS will be **DISMISSED**, leaving the Secretary as the sole defendant. Though no party raised the point, the statutory command is mandatory. Separately, former Secretary Mayorkas has left office. His successor "is automatically substituted as a party," and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d). The Court will therefore direct the Clerk to substitute Secretary Markwayne Mullin as defendant and amend the caption.

## IV. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS** on this 19th day of August, 2026,

**ORDERED** that Defendants' Motion to Dismiss, D.E. 61, is **DENIED**; and it is further

**ORDERED** that Locke's claims against the United States Department of Homeland Security are **DISMISSED**; and it is further

**ORDERED** that, in accordance with Federal Rule of Civil Procedure 25(d), the Clerk of Court shall substitute Markwayne Mullin, Secretary of Homeland Security, for former Secretary Alejandro Mayorkas, and shall amend the caption accordingly; and it is finally

**ORDERED** that Defendant shall answer the Amended Complaint within fourteen days of this Memorandum Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

Evelyn Padin, U.S.D.J.